MATTER OF T——

In RESCISSION Proceedings

A-8497160

*Decided by Assistant Commissioner July 31, 1958*

Rescission of adjustment of status acquired under section 245 of the 1952 act—Evidence required—Timely where district director's decision entered within 5-year period after adjustment, although appellate action occurred subsequent to that period.

(1) Adjustment of status acquired pursuant to section 245 of the 1952 act based on marriage to United States citizen and claim to nonquota status under section 101(a)(27)(A) of the act will not be rescinded where evidence fails to establish subject's lack of *bona fide* intent to enter into valid marital relationship, notwithstanding divorce obtained by citizen spouse on ground of desertion about 2 years later.

(2) Action taken by district director on June 3, 1958, rescinding adjustment of status acquired on June 11, 1953, was timely, although appellate rights preserved for alien prevented final disposition of case within the 5-year period of limitation provided by the statute.

ACTION: Proceedings under section 246(a) of the Immigration and Nationality Act and 8 CFR 246 to revoke adjustment of status granted under section 245 of the act.

## BEFORE THE ASSISTANT COMMISSIONER

**Discussion:** On December 31, 1952, the subject filed application for adjustment of status to that of an alien lawfully admitted for permanent residence pursuant to section 245 of the Immigration and Nationality Act which was granted on June 11, 1953. On June 3, 1958, the District Director at Chicago, Illinois, pursuant to section 246 of the act, ordered that the adjustment of the alien's status be rescinded on the ground that the marriage which formed the basis of the alien's claim to nonquota status under section 101(a)(27)(A) of the act upon which his application was predicated was not a stable, enduring, and *bona fide* relationship. From that order the alien appealed to the Regional Commissioner, St. Paul, Minnesota, who has certified the case to the Assistant Commissioner, Examinations Division.

Section 246(a) of the act provides that if at any time within 5 years after the status of a person has been otherwise adjusted under

96

the provisions of section 245 or 249 of the act or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting adjustment of status to such person and cancelling deportation in the case of such person, if that occurred, and the person shall thereupon be subject to all provisions of the act to the same extent as if the adjustment of status had not been made.

As set out above, the subject's application was granted on June 11, 1953, and ordered rescinded on June 3, 1958. The district director is the official to whom the Attorney General's authority under section 246 has been delegated. The entry of his order on June 3, 1958, tolled the 5-year period of limitation provided by that section notwithstanding that the appellate rights to which the alien is entitled have prevented final disposition of this case within the 5 years.

To be eligible for adjustment of status under section 245 of the act an applicant must be admissible to the United States for permanent residence under the act and a quota or nonquota immigrant visa must be immediately available to him both at the time of application and at the time the application is approved.

The evidence of record establishes that the alien was married by civil ceremony at Chicago, Illinois, on December 10, 1952, to a native-born citizen of the United States. The marriage was terminated on February 8, 1955, by an uncontested divorce obtained by the wife on the ground of desertion. The sole question to be resolved is whether the subject entered into a valid marital relationship in good faith or whether the marriage was fraudulent in that it was contracted solely for the purpose of establishing a basis for adjustment of his immigration status as a nonquota immigrant. If the marriage was a fraudulent one he would not have been eligible for such adjustment (*Lutwak* v. *United States*, 344 U.S. 604; *United States* v. *Rubenstein*, 151 F.2d 915). However, in view of his professional standing of surgeon, he could presumably have qualified for adjustment as a quota immigrant inasmuch as numbers under the first preference portion of the quota for Greece to which he would have been chargeable were available (Report #1, January 13, 1953, and Report #5, May 29, 1953, Visa Office, Department of State).

The evidence establishes that the parties first met each other sometime in September of 1952 and that thereafter the parties met at various times, resulting in a marriage by civil ceremony at Chicago, Illinois, on December 10, 1952. According to the wife's statement, subject proposed to her after a few dates, but she kept putting him off until the parties were officially engaged on December 6, 1952.

97

When plans for a marriage in a church were discussed, subject told her that there would be no time for it, that his visa would expire on December 26, 1952, and that he would be forced to go back to Greece on such date unless his marriage to her took place. According to her statement, subject at that time furthermore stated that she should not get the wrong idea about the haste or the possibility of his being deported but that he felt the marriage should take place immediately if he was to remain in the United States. The marriage was not entered into by her for the purpose of helping him remain in the United States. In the same statement of November 12, 1954, the wife alleged that in July 1953 subject stated that he never loved her; that he was in love with his common-law wife who resided in Greece; and that the only reason for the marriage was the desire of subject to evade the immigration laws and remain in the United States. Subject has stated that he did not marry his wife so that he could remain in the United States permanently but, on the other hand, that the marriage took place because he thought she was the right girl to have as his wife.

Subject claims that the marriage was consummated and that this occurred when visits were made by him and his wife to the home of the wife's parents or the home of subject's sister. He admitted, however, that it was the custom among the older Greek people that without a church marriage, a civil ceremony was not considered to be a valid marriage, although the younger set took a different view and that he considered himself married by the civil ceremony. On the other hand, the wife insists that the marriage was never consummated and that it was agreed beforehand that the marriage was not to be consummated until after the church wedding. Her statement is supported by the finding of the court in the divorce proceedings in its order granting her a divorce wherein it is stated that the marriage was never consummated. While subject did not testify in the divorce proceedings, personal service of the summons was made and he was represented by an attorney. Furthermore, in support of the wife's statement of non-consummation are certifications by 2 physicians as to the wife's physical condition. The parties never actually lived together with each other as husband and wife in a home of their own and subsequent to their marriage met each other either at the home of the wife's parents or at the home of subject's sister. Apparently, shortly after their marriage, a dispute arose as to the church ceremony with reference to whether or not the marriage should take place according to the Roman Catholic or the Greek Orthodox faith. Subject claims that as a result of the interference of the wife's mother, discord resulted and consequently the church ceremony never took place and a divorce resulted. The wife on the other hand claims that the church ceremony did not

take place for various reasons, one of the reasons given was that subject admitted he was in love with a woman in Greece with whom he had lived as common-law husband and wife for 3 years. In any event, the parties could not get together and divorce action resulted.

Proceedings under section 246 of the act for rescission of adjustment of status on the ground offered in this case are analagous to deportation proceedings brought under section 241(c) of the act. In such proceedings it has been consistently held that the respondent has the burden of showing that his marriage to a citizen was not contracted for the purpose of evading the immigration laws; the Government has the burden of establishing that its case rests upon reasonable, substantial and probative evidence (*Matter of V——*, A-10316169, 7 I. & N. Dec. 460; *Matter of T——*, A-8605228, 7 I. & N. Dec. 417; *Matter of M——*, A-10464027, 7 I. & N. Dec. 601).

As in other cases of this type, the facts regarding the difficulties between the parties are in dispute. Based on the evidence of record, it appears that no consummation took place. However, this fact by itself does not warrant a conclusion that a valid marriage was not entered into. It is only a factor to be considered in determining the *bona fides* of the marriage (*Matter of M——, supra*). Subject has denied that he entered into the civil marriage for the purpose of becoming a permanent resident of the United States. The testimony of the wife is conflicting as to the intent of subject in entering into the marriage. There was disclosure to her of subject's immigration status prior to their marriage and there was no conspiracy by both parties to evade the immigration laws. Her testimony indicates a meeting through mutual acquaintances, a period of courtship, and a desire of the subject to marry her in order to establish a marital relationship. The only evidence in the case that the marriage was entered into to evade the immigration laws is the wife's statement that in July 1953 subject admitted that this was his sole purpose in marrying her. This statement by her, by itself, in light of the other evidence of record, is insufficient to establish a willful attempt by subject to enter into the marital relationship for the purpose of adjusting his immigration status. It is, therefore, concluded that the marriage relationship entered into by subject was made with a *bona fide* intent to enter into a valid marital relationship and, consequently, there was no fraud in connection with subject's application for adjustment of status under section 245 of the Immigration and Nationality Act. This conclusion is further buttressed by the fact that the alien could have adjusted status as a quota immigrant as previously indicated. Therefore, the appeal will be sustained.

**Order:** It is ordered that the subject's appeal be sustained.